Hello, Mr. Newton Yes, Your Honor, Talmadge Newton on behalf of the appellant Gerald Sewell. May it please the Court, Opposing Counsel, the facts of this case are unsettling, but the appellant is not asking this panel to acquit him or even to find that he wasn't trapped. The appellant is simply asking that his defense of entrapment be submitted to a jury for consideration. A jury, and not a judge, should weigh the facts and the evidence as presented at trial and make the ultimate determination in this you have so little time. Did Mr. Sewell at any time stop responding to the post by Brionica and then was then urged by her to re-engage? Or did he stay in the conversation without any gaps in time? Your Honor, I understand the Court's question. This is not a case such as Mercado that lasted days and days or Anderson even where people drifted in, went silent and were brought back in by the federal agent. This was a conversation that was relatively short in duration. Like many modern electronic conversations, it starts and stops and stutters and presumably people are doing other things, so it is not a necessarily continuous flow, but I don't think anybody could say that the conversation was paused or that Mr. Sewell was brought back into it after a lengthy pause. Now, although Mr. Sewell expressed reluctance based on Brionica's purported age, on a couple of occasions, how would we say that the one line, as you just noted, the one line responses by the agent went beyond a merely ordinary presentation of the opportunity for the offense and instead constituted repeated attempts? I really do believe, Your Honor, that... I'm not done. I'm sorry. No, I'm sorry. Sorry I'm so long-winded, but at persuasion that would be sufficient to cause a person who would not otherwise commit the crime to do so. And I think, Your Honor, that when weighing the submissibility of an entrapment instruction such as this, it is not any one thing, and I think that any one aspect of this can be overcome by the government's position, but I think with the totality that it is the government's post that's out there. There is an age-altered photograph that the initial conversation, the court will recall, as it starts somewhat benign, what are you looking for? I'm looking for a ride, dot, dot, dot, and maybe something else, and you? I'm looking for that from a woman. This starts off rather neutrally, and I think when you combine that, that the government, such as in Anderson, is the first to become explicit and take it sexually, when you combine that there are two arguable attempts by the appellant to issuance of the instruction by the district court, and Mayfield cautioned that assessing the sufficiency does not mean that the judge weighs the evidence and decides whether the defendant is believable, and certainly an attack on the sufficiency will be leveled by the government in their closing argument, and ultimately, I believe, though, the point is that the jury should decide this defense. It is not appropriate for the defendant, with this matrix of facts, to have the submissibility of the defense denied to him at the outset. I think there is sufficient evidence that existed before the district court to allow him to present this and to have it argued both by the parties. Mr. Newton, can I ask you to comment on one aspect of this that stands out to me in the transcript here? Yes, Your Honor. After Mr. Sewell recognizes the age and expresses concern about the age, that's what you were referring to a second ago. Yes, Judge. You are jailbait, was his comment, etc., okay? We come to a portion of the exchange where there's absolutely no doubt it's sexual, in its discussion, and then at 1.30 and 1.32 in particular, there's a pause in the colloquy. I'll let you look at it there. I'm caught up, Judge. You got me? Okay. There's a pause then, okay? And at that point, the pause runs for about 40 minutes, okay? And then Mr. Sewell re-engages by asking a quite particular question. What's the address, meaning where can we meet? And it goes on from there, right? So he had an opportunity to be concerned enough about the age to just say, look, I'm done. 1.32, I'm done. I'm clear this is, you know, territory with a minor that way. But then he picks it back up and he's quite persistent with it. You know, I wish you were 18, you know, but I mean, he keeps on going. I'm on my way. I'm on my way, etc. So that's what gives me pause on the, you know, focus on whether there's, you know, undue inducement here. And I think pause is appropriate, and I think that the exchange is unfortunate, especially for defense counsel. But I think there are other aspects as well. There's a two-hour period at the beginning before age really even comes into this, as you look at the time frame, where the initial text begins at, Your Honor, I'm in the appendix on Government Exhibit 17, starts at 10.13, and her age doesn't come in for two hours until nearly 12.22. And then after the reignition that you just referenced, Your Honor, he does bring up age again, where at 2.40 he says, I wish you were 18. Four minutes later, Brionica, who's in fact, of course, an FBI agent, a male of age, says, so I don't get a choice. I don't need to know your real name. So there's another hook back in, even there. And I think it's appropriate for a jury to consider this, that a jury could consider the nuances of conversation. I watch my teenage daughter having conversations on text, Snapchat, and Instagram at the same time. And those are staggered in the way they come out, and I think that that, though your concerns, would be the government's position in closing argument on why the defense of entrapment is not available to Mr. Sewell. But I think that that should be a question for the jury. And I will, if there are no pressing questions, I'll reserve my remaining time. Although, any questions? Okay. I will sit down and reserve my remaining time. Thank you. You're going to get the full three minutes. And hello, Ms. Ruppert. Good afternoon, Your Honors. May it please the court. The appellant offered insufficient evidence of government inducement to commit attempted enticement of a minor, and so the district court properly refused a jury instruction on entrapment. May I stop you for a second? The initial, I don't know anything about social media, because none of us are on it. The initial contact here was on this Craigslist. Is the age requirement for posting on that site 18 years of age? You have to be 18. Judge, honestly, in terms of the evidence in the record at trial, I don't believe there was any evidence to say or not say that you had to be a specific age to post on Craigslist. Craigslist is a site that is commonly used for a number of things to buy and sell items, but in this particular case, there was, there's something called the missed connection section, and that is commonly used for finding sexual liaisons. But there was no evidence at trial whether you had to be 18 or not 18, so I can't speak to what Craigslist's requirements are, other than to say that I don't believe there's a certification process to be able to post an ad where you have to verify you're 18 or not, unlike some of the other cases this court has heard, an attempted enticement of minor cases where it's a dating site where you have to make some sort of verification that you are 18 years old. Now, in his initial response to the post, he stated that he was a man seeking a woman, and the agent responded that, quote, he might have found that. Wouldn't that be interpreted as a statement that she was a woman and therefore indicate that he was engaging with an adult at the outset? Yeah, potentially, Your Honor, that from the outset where it was a, the only thing that the advertisement said was looking for a ride, and so where appellant then messages that saying, where are you looking to go, and he talks about he's a man seeking a sexual liaison with a woman, you might have found her could be interpreted as potentially being an adult. However, within, you know, a couple of messages within two hours, Brionica then drops down saying, I'm 15, how old are you? And this was after an age regress photo was provided to Mr. Sewell as part of this communication. And then after this exchange of photograph and the age reveal, I'm 15, we're essentially off to the races. There was multiple times that Mr. Sewell said, what do you want to do for a good time? Where can we play at? Where can we meet at? What's your address? What's your phone number? He explicitly discussed sexual acts that he wanted to commit with Brionica after this age reveal saying, I'm 15 years old. And so this entirety of the conversation, which spans approximately nine pages in government's exhibit number 17, it's approximately 89 messages going back and forth. The totality of that demonstrates that there was no government inducement. Government inducement, it means more than mere government solicitation of a crime. And the breadth of these messages going back and And so a defendant to be able to get an entrapment instruction must proffer evidence on both elements of the defense, that being predisposition and inducement. And that is to say that the defendant must point to evidence in the record that would allow a rational jury to conclude that he was entrapped. And that- Now, here's the thing. When he learned of her age, of course, he expressed this reluctance, both initially and again, you know, subsequently. And after each of those expressions of reluctance that were based on her age, the agent responded by portraying Sewell's reluctance as a sort of, not a sort of, but as a repudiation of her right to autonomy over her own sexuality. Do you think that in any way calls into question the factor of inducement? I don't, Judge. Respectfully, I think that this falls more in the bucket of solicitation versus the plus factors that Mayfield discusses, which is to say that inducement means more than mere government solicitation of a crime, that there has to be a plus factor. Mayfield gives a non-exhaustive list of other conduct to include repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship. And so, in examining what the agent's responses were to some of the statements by appellant, we would put that more in the solicitation of the crime bucket versus the plus factors that this court articulated in Mayfield, that that does not- Would you be kind enough to distinguish, if you can, Leal? I'm sorry, distinguish what? United States versus Leal. Oh, Your Honor, the cases I have before me, I could talk about Mercado. I could talk about Anderson. Unfortunately, I don't have that case readily available at my fingertips, so I would be unable to do that. But of the two cases that I believe both myself and appellant have cited to in our briefs, there have been two cases post-Mayfield that this court has considered in terms of attempted enticement of minor cases and the denial of an entrapment instruction. I do think those two cases are instructive in terms of the contrast between those two. Mercado, where this court said that the denial of the entrapment instruction was proper, which I think those facts are very much in line with the facts of this case, versus the facts in Anderson, where this court- Actually, Judge Hamilton, you wrote the opinion in Anderson, talked about the 11 direct attempts by the purported minor to have the individual come meet for sex, that there was use of, you wasted my time. There were a number of things that were in that these facts are more in line with Mercado, where this was just the solicitation of the crime versus any of the plus factors contemplated by Mayfield. I hope that answers your question, Judge Rovner. Thank you. Thank you. So to summarize the facts in this case, the evidence that appellant points to, the only evidence were the chats in this case. They're summarizing the government's appendix and government's exhibit 17, and that six-hour conversation from beginning to end demonstrates that what happened in this case was mere government solicitation of the crime, and that the plus factors contemplated in Mayfield did not exist. There would be no rational jury that could find entrapment in this case, and because of that, the district court properly refused the entrapment instruction. We would ask that this court affirm the judgment of the district court. If there are no other questions, I would thank the court. And we thank you. Thank you very much. Thank you. Your honors, the truth is this case is neither Mercado nor Anderson. It's somewhere in between. I think that Mercado and Anderson as post-Mayfield examples are very different cases, and this doesn't match the facts of either. I think this is going to be a pattern before this court of continuing to zero in on exactly what the explicit standard is, but as Anderson said, the accused is entitled to present the defense at trial if he shows some evidence that supports it, and the court highlighted that the initial burden is not great. The defendant must produce some evidence from which a reasonable jury could find the government inducement and a lack of predisposition, and I think that Mr. Sewell met that burden at trial. For these reasons and those set forth in the briefs, the appellant is requesting that the judgment and conviction be set aside and this matter be remanded to the district court for a new trial consistent with the instructions of this court. If there are no further questions, I'll end my time. And I would like you to just And for doing such a fine, fine job for your client, we are so grateful. And we are as well very grateful to Ms. Ruppert. I'm sorry that the courtroom wasn't more crowded so that, particularly with young lawyers, so that they could have heard that truly, just, you both just did such a good job. We really are thankful. And we'll take the case under advisement, of course, and we will adjourn until tomorrow morning at 930 with our sincere thanks to everyone. Be well. Thank you. Thank you, Your Honors.